UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK PATTERSON** | |
| | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO.   20-204-JWD-SDJ** |
| **MARSHALL MCDERMITT, ET AL** | |

**RULING AND ORDER**

This matter comes before the Court on the *Joint Motion for Summary Judgment* (Doc. 19) filed by Defendants Marshall McDermitt, Chief Murphy J. Paul, Jr., and the City of Baton Rouge/Parish of East Baton Rouge (collectively "Defendants"). Plaintiff Mark Patterson ("Patterson" or "Plaintiff") opposes the motion. (Doc. 23.) Defendant Marshall McDermitt ("McDermitt") filed a reply. (Doc. 27.) Plaintiff also filed a Supplemental Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment (Doc. 23-29), to which Defendants filed a response (Doc. 36). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted.

**I.      Relevant Background**

This case arises from an arrest by McDermitt, a former law enforcement officer with the Baton Rouge Police Department ("BRPD"), that occurred on April 7, 2019. (*See* Doc. 19-1 at 1 (citing Doc. 19-3 at 7).) On that date, Plaintiff and his friends left a bar in Tigerland, located in Baton Rouge, Louisiana. (Doc. 23 at 1 (citing Doc. 1 at 1–2).) As they were leaving, a fight started outside of the bar between several bar employees and one of Plaintiff's friends, knocking the friend unconscious. (*Id*.) As this altercation continued, one of the bar employees informed McDermitt, who was on duty nearby, of the disturbance. (*See* Doc. 19-1 at 1 (citing Doc. 19-3 at 7); Doc. 23

1

at 1 (citing Doc. 1 at 1–2).) McDermitt followed the employee back to the front of the bar. (Doc. 19-1 at 1; Doc. 23 at 1.) The altercation was ongoing when McDermitt arrived on scene, and Plaintiff was physically and verbally engaging with a group of men who were pushing and yelling at Plaintiff. (*See Plaintiff's Statement of Undisputed Material Facts* ("Pl.'s SUMF"), Doc. 23-1 at 2–3, ¶ B1.)[1] This prompted McDermitt to initiate his encounter with Plaintiff. (*See id.*; Doc. 19-1 at 2.) McDermitt attempted to intervene by leading Plaintiff away from the crowd assembled in front of the bar and toward the parking lot, where McDermitt's cruiser was parked. (*See* Pl.'s SUMF at ¶ B2; Doc. 19-1 at 2.) Plaintiff continued verbally engaging with crowd members while McDermitt tried to diffuse the situation by pushing Plaintiff to walk away from the area. (*See* Pl.'s SUMF at ¶ B2; Doc. 19-1 at 2 (citing Doc. 19-4 at 11).) Still, Plaintiff resisted McDermitt's efforts and struggled to break free from McDermitt's control to continue engaging with the crowd. (*See* Pl.'s SUMF at ¶ B2; Doc. 19-1 at 2 (citing Doc. 19-4 at 11).) McDermitt then started handcuffing Plaintiff and secured one handcuff on Plaintiff's right wrist. (Pl.'s SUMF at ¶ B4; Doc. 19-1 at 2.)

The parties disagree on what happened next. Defendants assert:

> With one wrist in handcuffs, Patterson's resistance continued, as did his refusal to follow verbal commands. Officer McDermitt attempted to tackle Patterson to the ground, but Patterson resisted by holding tight to nearby vehicles. In a final attempt to gain Patterson's compliance and fearing that Patterson would use the metal handcuff as a weapon, Officer McDermitt struck Patterson's face multiple times in rapid succession.

(Doc. 19-1 at 2 (citing Doc. 19-4 at 11).)

---

[1] The Court notes that McDermitt did not submit a reply statement of material facts with either of his replies to Plaintiff's opposition, in accordance with Local Civil Rule 56(d) of the U.S. District Court for the Middle District of Louisiana. (*See* Docs. 27 and 36.) Accordingly, the additional facts contained in the "Plaintiff's List of Material Facts" section of *Plaintiff's Statement of Undisputed Material Facts* (*see* Doc. 23-1 at 2–9) are uncontroverted and, if properly supported by record citations, shall be deemed admitted for purposes of summary judgment. *See* Local Civil Rule 56(f)–(g).

Plaintiff, on the other hand, claims that he had ceased resisting McDermitt's orders and detention efforts before McDermitt struck him in the face. (*See* Pl.'s SUMF at ¶ B5.) Plaintiff references McDermitt's Narrative in the BRPD Incident Report, in which McDermitt states that Plaintiff complied with his commands to place his hands behind his back, but then "quickly turned around" as McDermitt placed the first handcuff on Plaintiff's wrist. (*See* Pl.'s SUMF at ¶ B6 (citing Doc. 23-2 at 11).) Plaintiff avers that McDermitt's statement suggests that Plaintiff was continuing to resist detention when he "quickly turned around." (Pl.'s SUMF at ¶ B6.) Yet according to Plaintiff, movement of his right arm was caused by the force of McDermitt's attempt to tackle him. (Pl.'s SUMF at ¶¶ B7, B9.) This version of events is supported by video footage of the incident, according to Plaintiff. (*See* Pl.'s SUMF at ¶¶ B7–B9.) Plaintiff maintains that he had ceased resisting when McDermitt initiated his takedown and when one or more bar employees physically restrained Plaintiff by placing him in a headlock, as reflected in the referenced videos. (*See* Pl.'s SUMF at ¶¶ B10–B14.)

On April 7, 2019, Plaintiff was arrested on three charges: (1) disturbing the peace through intoxication under Code of Ordinances of the City of Baton Rouge and the Parish of East Baton Rouge ("Code of Ordinances") 13:103(3); (2) resisting an officer under Code of Ordinances 13:108;[2] and (3) battery of a police officer under Code of Ordinances 13:35.1.[3] (*Defendants' Joint Statement of Uncontested Material Facts* ("Defs.' SUMF, Doc. 19-2 at 1, ¶ 1.) These charges were prosecuted in the Baton Rouge City Court. (Defs.' SUMF at ¶ 2.) Plaintiff retained private counsel to defend him in the criminal prosecution in Baton Rouge City Court. (Defs.' SUMF at ¶ 4; Pl.'s SUMF at ¶ A4.)

---

[2] Erroneously cited as Code of Ordinances Section 14:108 in Defendants' *Joint Statement of Uncontested Material Facts*. (*See* Defs.' SUMF at ¶ 1.)
[3] Erroneously cited as Code of Ordinances Section 14:35.1 in *Defendants' Joint Statement of Uncontested Material Facts*. (*See* Defs.' SUMF at ¶ 1.)

Plaintiff initially pleaded not guilty to all three charges. (Defs.' SUMF at ¶ 3; Pl.'s SUMF at ¶ A3.) Plaintiff subsequently withdrew his not guilty plea, however, and was admitted to a pretrial diversion program. (Defs.' SUMF at ¶ 5; Pl.'s SUMF at ¶ A5.) According to the Pre-Trial Diversion Participation Agreement Plaintiff signed on November 12, 2019, "the Parish Attorney's Pre-Trial Diversion Program is designed to help [participants] avoid a conviction record. (*See* Doc. 19-7 at 1; Defs.' SUMF at ¶ 6; Pl.'s SUMF at ¶ A6.) Upon Plaintiff's successful completion of the pre-trial diversion program's requirements, on February 26, 2020, the Pretrial Officer recommended to the City Prosecutor's Office that the pending charges against Patterson be dismissed. (Defs.' SUMF at ¶¶ 9–10 (citing Doc. 19-9); Pl.'s SUMF at ¶¶ A9–A10.) Consistent with that recommendation, the City Prosecutor's Office dismissed the charges. (Defs.' SUMF at ¶ 11; Pl.'s SUMF at ¶ A11.)

On April 3, 2020, Plaintiff filed *Plaintiff's Complaint for Damages* ("Complaint") in this Court. (Doc. 1.) Plaintiff asserts claims under 42 U.S.C. § 1983 against McDermitt, in his individual capacity, for excessive force and malicious prosecution in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. (*Id*. at 8–15). Plaintiff also asserts tort claims against McDermitt for battery, false arrest and imprisonment, and intentional infliction of emotional distress under state law. (*Id*. at 19–20.) Finally, Plaintiff brings claims under 42 U.S.C. § 1983 and state law against Chief Murphy Paul, Jr. ("Chief Paul"), in his official capacity as the Chief of the BRPD, and the City of Baton Rouge (the "City/Parish"). (*Id*. at 15–19.) Defendants now move for summary judgment on Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III. Discussion

### A. Section 1983 Claims Against McDermitt

#### 1. The *Heck* Doctrine Generally

Defendants seek summary judgment on Plaintiff's claims against McDermitt under 42 U.S.C. § 1983 on the basis that such claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). "In *Heck*, the Supreme Court held that a plaintiff who has been convicted of a crime cannot bring a § 1983 claim challenging the constitutionality of his conviction unless that conviction has been

5

reversed, expunged, declared invalid, or called into question by federal habeas corpus." *Arnold v. Town of Slaughter*, 100 Fed. App'x 321, 323 (5th Cir. 2004) (per curiam) (citing *Heck*, 512 U.S. at 486–87).

The Fifth Circuit has "applied *Heck* to bar claims for excessive force, false arrest, malicious prosecution, and other claims of unlawful seizure." *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x 578, 583 (5th Cir. 2021) (per curiam) (citing *Connors v. Graves*, 538 F.3d 373, 377–78 (5th Cir. 2008) (excessive force and unlawful seizure); *Wells v. Bonner*, 45 F.3d 90, 94–96 (5th Cir. 1995) (malicious prosecution and false arrest)).

### 2. Excessive Force

#### 1. Parties' Arguments

Defendants argue that Plaintiff's excessive force claim under the Fourth Amendment is barred by *Heck* because the claim would call into question the validity of Plaintiff's convictions for resisting arrest and battery of a police officer. (*See* Doc. 19-1 at 6–8.)

In response, Plaintiff concedes that "the subsequent dismissal of the three charges against [him] as a result of his successful completion of the . . . pretrial diversionary program still constitute a 'conviction' for all three charges" for *Heck* purposes. (Doc. 23 at 13.) Nevertheless, Plaintiff argues that the *Heck* doctrine does not bar his excessive force claim under Section 1983 because the force used after he ceased resisting was excessive, unnecessary, and out of proportion. (*Id.*) Plaintiff maintains that the facts and circumstances surrounding this claim do not necessarily imply the invalidity of a conviction for his earlier resistance. (*Id.*) Additionally, Plaintiff filed a *Supplemental Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment*, in which he argues that a Baton Rouge City Court Order, entered on August 4, 2021, expunging

6

all records of the summons issued to Plaintiff for all three charges "obviates the legal and procedural bar interposed by" *Heck*. (Doc. 23-29 at 1 (citing Doc. 23-29 at 6); *see also id*. at 4.)

### 2. Applicable Law

The Fifth Circuit has recognized that "a claim of excessive force is not barred by *Heck* if it is 'temporally and conceptually distinct' from the defendant's conviction." *Thomas v. Pohlmann*, 681 Fed. App'x 401, 406 (5th Cir. 2017) (citing *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008)). The inquiry as to whether an excessive force claim is barred under *Heck* is "analytical and fact-intensive," requiring courts "to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Id.* (citing *Bush*, 513 F.3d at 497). For example, in *Bush*, the Fifth Circuit held that an excessive force claim was separate from the plaintiff's resisting arrest conviction because the facts of the case were such that the arrest could be separated into two distinct stages: the first stage consisting of the period when the plaintiff was unrestrained and resistant and the second stage, which occurred when the plaintiff was handcuffed and compliant. *Bush*, 513 F.3d at 499. Because the judge in the criminal proceeding did not clearly indicate that the conviction was predicated on the plaintiff's alleged resistance in the second stage, the Fifth Circuit held that the plaintiff's excessive force claim in the second stage was separable and not barred by *Heck*. *Id*.

If, however, "a § 1983 excessive force plaintiff asserts absolute innocence in his complaint with regard to the entire arrest encounter, and not merely to a divisible portion of it, the Fifth Circuit holds that the claim is necessarily inconsistent and inseparable from a related conviction and therefore barred by *Heck*." *Williams v. Town of Delhi*, No. 14-00043, 2015 WL 868746, at *4 (W.D. La. Feb. 27, 2015). In *Deleon v. City of Corpus Christi*, the Fifth Circuit found that *Heck*

7

precluded a claim of excessive force because the complaint described a single violent encounter, throughout which an officer used excessive force on the "innocent" plaintiff, and implicitly challenged his aggravated assault conviction. 488 F.3d 649, 656–57 (5th Cir. 2007); *see also Price v. City of Rayne*, 2016 WL 866945, at *3 (W.D. La. Mar. 3, 2016) ("[W]hen a plaintiff contends that he did not resist arrest, that is, that he committed no offense and was instead unjustly victimized, the Fifth Circuit has uniformly concluded that his excessive force claim is *Heck* barred because the excessive force claim necessarily attacks the validity of the conviction for resisting arrest."); *Daigre v. City of Waveland*, 549 Fed. App'x 283, 286–87 (5th Cir. 2013) (per curiam) (holding that *Heck* precluded plaintiff from proceeding on her excessive force claim on the basis that plaintiff alleged complete innocence in her complaint, which was necessarily inconsistent with the validity of her subsequent resisting arrest conviction). Thus, to avoid dismissal under *Heck*, a plaintiff must clear two hurdles:

> First, the allegations in his complaint must not be inherently inconsistent with his resisting arrest conviction; in other words, the plaintiff must not allege absolute innocence throughout the arrest encounter because such a position would necessarily contravene his subsequent conviction. Second, only after overcoming the first hurdle, he must generate factual issues that: (1) his arrest occurred in divisible stages, and (2) [the officer] exerted excessive force after he was restrained and compliant.

*Williams*, 2015 WL 868746, at *4.

### 3. Analysis

The Court finds that dismissal of Plaintiff's excessive force claim is warranted under *Heck* because the allegations in the Complaint are inherently inconsistent with his conviction. Patterson was convicted of resisting an officer in violation of Code of Ordinances Section 13:108, which prohibits "the intentional opposition or resistance to, or obstruction of" a police officer "acting in his official capacity and authorized by law to make a lawful arrest [or] lawful detention . . . ."

8

Patterson was also convicted of battery of a police officer under Code of Ordinances Section 13:35.1.[4]

Yet the Complaint includes several allegations that are at odds with Plaintiff's conviction for resisting an officer. For instance, the Complaint, in describing when McDermitt first approached Plaintiff at the scene, alleges that "Plaintiff cooperated with Defendant McDermitt's orders to walk away from the bar." (Doc. 1 at 4.) The Complaint further alleges that, as McDermitt pushed Plaintiff backwards from the bar towards the parking lot, "Plaintiff never once resisted or attempted to resist Defendant McDermitt's orders." (*Id*. at 5.) Plaintiff describes McDermitt's actions and use of force as "objectively unreasonable in light of the facts and circumstances confronting [him]." (*Id*. at 9.) In multiple parts of the Complaint, Plaintiff essentially denies committing any criminal offense, asserting that McDermitt "baselessly" caused him to be "falsely charged and prosecuted" for battery on an officer, resisting an officer, and public intoxication, resulting in his "unlawful confinement and prosecution." (*See id*. at 2, 6, 13, 20.) These allegations—which amount an assertion that Plaintiff is innocent as to all three charges—contradict his convictions.

Plaintiff argues in his opposition that his excessive force claim is not barred by *Heck* because (1) temporally, McDermitt used excessive force after he had ceased resisting; and (2) conceptually, the level of force McDermitt used was out of proportion to the threat Plaintiff posed at the moment such force was applied. (*See* Doc. 23 at 13.) But these distinctions are not raised in the Complaint. And as the Fifth Circuit has previously explained:

---

[4] The Fifth Circuit considers voluntary participation in a pretrial diversion program to be a "conviction" for purposes of *Heck*. *Garig v. Travis*, Civil Action No. 20-654-JWD-RLB, 2021 WL 2708910, at *21 (M.D. La. June 30, 2021) (citing *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 506 (M.D. La. 2013)). Moreover, the dismissal of charges after completion of a pretrial program does not constitute a termination of the criminal proceedings in favor of the plaintiff. *Id*. (citing *Evans v. Ball*, 168 F.3d 856, 859 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)).

> "[A] plaintiff's claim is Heck-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." [*Bush*, 513 F.3d at] 497 n. 14 (alteration omitted) (quoting *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006)); *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (5th Cir. 2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). This is because "factual assertions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (alterations and citation omitted).

*Daigre*, 549 Fed. App'x. at 286. Here, Plaintiff's allegations maintaining his innocence relate to the entire encounter, as opposed to a discrete part, such as when McDermitt attempted to tackle Plaintiff or started striking him in the face. Consequently, Plaintiff's excessive force claim is subject to dismissal under *Heck*.

Finally, the Court is not persuaded by Plaintiff's contention that Defendants' arguments in support of dismissal of Plaintiff's claims based on *Heck* are now invalid, considering the judicial order expunging all records of the summons issued to Plaintiff associated with the three charges at issue. (*See* Doc. 23-29 at 1–2.) As Defendants correctly note in their *Response to Plaintiff's Supplemental Memorandum and Exhibit in Opposition to Defendants' Joint Motion for Summary Judgment* (*see* Doc. 36 at 1–2), the Supreme Court's holding in *Heck* makes clear that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights unless he demonstrates that the conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Heck*, 512 U.S. at 486–87. Plaintiff has not shown that his convictions were invalidated through any of these methods. Accordingly, Plaintiff's excessive force claim remains subject to dismissal

under *Heck*, notwithstanding the referenced judicial expungement order, and Defendants are entitled to summary judgment.[5]

### 3. Malicious Prosecution

Defendants also argue that Plaintiff's Section 1983 claim for malicious prosecution is subject to dismissal under governing Fifth Circuit precedent. (*See* Doc. 19-1 at 11–14.) In response, Plaintiff concedes that his malicious prosecution claim fails under controlling authority, and apparently does not dispute Defendants' motion as to this claim. (*See* Doc. 23 at 16.) Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's Section 1983 claim for malicious prosecution.

### B. State Law Claims Against McDermitt

#### 1. Parties' Arguments

Plaintiff asserts intentional tort claims against McDermitt under Louisiana law. (*See* Doc. 1 at 19–20.) Defendants argue that all of Plaintiff's state law claims must be dismissed pursuant to *Heck*. (Doc. 19-1 at 14–15.) Plaintiff responds that his state law claims for battery and intentional infliction of emotional distress are separate and distinct from his underlying conviction for the same reasons discussed above with respect to his excessive force claim under Section 1983. (Doc. 23 at 17.) Plaintiff also contends that, based on the record evidence, material factual issues exist regarding the elements of his claims for battery and intentional infliction of emotional distress, such that summary judgment should be denied. (*See id*. at 17–19.)

---

[5] Additionally, in the *Motion and Order to Expunge Record/Summons* attached as Exhibit 1 with Plaintiff's supplemental memorandum, the Order directs expungement of "all records of the summons issued to [Plaintiff] on 04/07/2019 by the Baton Rouge City Police Dept." on the three charges "in accordance with Louisiana Code of Criminal Procedure 971 et seq." (*See* Doc. 23-29.) The Court notes that obtaining an expungement of records related to an arrest or conviction under Louisiana law "allows for the removal of a record from public access but does not result in the destruction of the record." *See* La. Code Crim. Proc. art. 971(1); *see also id*. at art. 972(1). And so, even after a record is expunged in accordance with La. Code Crim. Proc. art. 971 *et seq*., the conviction itself remains. *See id*. at art. 973; *id*. at art. 971(2).

11

**2. Analysis**

The *Heck* doctrine has been applied to bar state law tort claims. *See Martin v. Roy*, Civil Action No. 20-339-JWD-EWD, 2021 WL 1080933, at *13 (M.D. La. Mar. 18, 2021); *Lowell v. Ard*, Civil Action No. 17-00187-BAJ-RLB, 2019 WL 4855150, at *3 (M.D. La. Oct. 1, 2019). Again, *Heck* held that a civil tort action is not an appropriate vehicle for challenging the validity of outstanding criminal judgments. *See Heck*, 512 U.S. at 486. All of Plaintiff's state law tort claims stem from his arrest. (*See* Doc. 1 at 19–20.) And so, because Plaintiff has "failed to distinguish these torts from the factual basis for" his underlying convictions, his state law tort claims "are inseparable and *Heck*-barred." *Price v. City of Bossier*, 841 Fed. App'x 650, 654 (5th Cir. 2021) (citing *DeLeon*, 488 F.3d at 657). The Court will therefore grant Defendants' motion for summary judgment as Plaintiff's state law claims against McDermott for battery, false arrest and imprisonment, and intentional infliction of emotional distress.

### C. Section 1983 Official Capacity Claims Against Chief Paul

Plaintiff sues Chief Paul in his official capacity as Chief of the BRPD. (Doc. 1 at 3.) In support of their motion for summary judgment on Plaintiff's Section 1983 official capacity claim against Chief Paul, Defendants argue: "Since the City/Parish is a named defendant in the suit, and the claims against Chief Paul and the City/Parish are identical, Patterson's claims against Chief Paul should be dismissed as duplicative of the claims against the City/Parish." (Doc. 19-1 at 15–16.) The Court agrees.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, Plaintiff's official capacity allegations against Chief Paul are essentially the same as his

Section 1983 allegations against the City/Parish. Moreover, Plaintiff seems to acknowledge this in his Opposition. (*See* Doc. 23 at 19.) Accordingly, the Court will grant Defendants' motion as to Plaintiff's Section 1983 claims against Chief Paul in his official capacity.

### D. Section 1983 Official Capacity Claims Against the City/Parish

#### 1. Parties' Arguments

Plaintiff also asserts a municipal liability claim against the City/Parish. (*See* Doc. 1 at 15–19.) Plaintiff argues that he has sufficiently established, through the statistics regarding complaints against officers and the outcomes of investigations into those complaints, that the "moving force" for the violation of his constitutional rights was "the policy or custom of the City/Parish in its failure to properly discipline/supervise and/or train its employees." (Doc. 23 at 22.)

#### 2. Applicable Law and Analysis

Municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, to succeed on his municipal liability claim, Plaintiff must prove an underlying constitutional violation. *See id*. Having determined that Plaintiff's excessive force claim against McDermitt is barred by *Heck*, Plaintiff has not raised a genuine issue for trial regarding a viable constitutional violation to support his municipal liability claim. As a result, the Court will grant summary judgment as to Plaintiff's municipal liability claims under Section 1983.

### E. State Law Claims against the City/Parish

Plaintiff apparently claims that the City/Parish is vicariously liable for McDermitt's tortious actions under Louisiana Civil Code article 2320. (*See* Doc. 23 at 17, 24.) Defendants argue

that Plaintiff's vicarious liability claims should be dismissed because *Heck* bars the underlying state law tort claims against McDermitt. (Doc. 19-1 at 19–20.) The Court agrees and finds that Plaintiff's vicarious liability claims against the City/Parish for the tortious conduct of McDermitt under La. Civ. Code art. 2320 are also precluded by *Heck*. *See Martin*, 2021 WL 1080933, at *13 (citing *Williams*, 2015 WL 868746, at *9). The Court will therefore grant Defendants' motion for summary judgment as to these claims.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Joint Motion for Summary Judgment* (Doc. 19) filed by Defendants Marshall McDermitt, Chief Murphy J. Paul, Jr., and the City of Baton Rouge/Parish of East Baton Rouge is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED**, subject to Plaintiff's right to assert his claims again if the requisite conditions set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), are met.

Signed in Baton Rouge, Louisiana, on <u>March 29, 2022</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**